UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHADWICK SMITH,

Plaintiff,

v.

GUIDANT GLOBAL INC., ET AL.,

Defendants.

Case No. 19-cv-12318

UNITED STATES DISTRICT COURT
JUDGE GERSHWIN A. DRAIN

_____/

## OPINION AND ORDER (1) GRANTING PLAINTIFF'S MOTION FOR CONDITIONAL CERTIFICATION AND COURT-AUTHORIZED NOTICE [#92]; (2) DENYING WITHOUT PREJUDICE PLAINTIFF'S MOTION FOR TOLLING [#83]; AND (3) GRANTING THE PARTIES' JOINT MOTION TO EXTEND EXISTING DEADLINES [#102]

### I. INTRODUCTION

Plaintiff Chadwick Smith ("Plaintiff") filed the instant collective action under the Fair Labor Standards Act ("FLSA") for unpaid overtime against Defendant Guidant Global, Inc. *See* ECF No. 1. Plaintiff subsequently amended his Complaint to add Defendant Guidant Group, Inc.[1] *See* ECF No. 8.

Presently before the Court are Plaintiff's Motion for Tolling (ECF No. 83) and Motion for Conditional Certification and Court-Authorized Notice (ECF No.

---

[1] Hereinafter, the Court will refer to Defendants Guidant Global, Inc. and Guidant Group, Inc. together as "Guidant."

1

92).  The parties' Joint Motion to Extend Existing Deadlines (ECF No. 102) is also

before the Court.  These motions are fully briefed.  On July 20, 2021, the Court held

a hearing on this matter.  For the reasons that follow, the Court will **GRANT**

Plaintiff's Motion for Conditional Certification and Court-Authorized Notice [#92].

The Court will also **DENY WITHOUT PREJUDICE** Plaintiff's Motion for

Tolling [#83].  Lastly, the Court will **GRANT** the parties' Joint Motion to Extend

Existing Deadlines [#102].

## II. Factual & Procedural Background

Plaintiff asserts that he and those "similarly situated" to him are individuals

who were employed by Guidant as hourly employees.  ECF No. 8, PageID.24, 27.

Plaintiff brings this action against Guidant for allegedly failing to compensate him,

and other workers like him, for overtime as required by the FLSA, 29 U.S.C. 201 *et*

*seq*.  *Id.* at PageID.24.  He seeks to recover unpaid overtime and other damages due

to him and the putative class members in this collective action.  *Id.*  On December

11, 2019, the Court denied Guidant's Motion to Dismiss, finding that Plaintiff

sufficiently alleged Guidant's joint employment relationship.   ECF No. 20,

PageID.329.  The Court also determined that Guidant's raised consent issue was

moot.  *See id.* at PageID.329.

On August 20, 2020, the Court denied Plaintiff's Motion for Conditional

Certification of a class defined as: "[a]ll workers covered by a Guidant Staffing

Company Agreement who were paid straight time for overtime within the past 3 years." *See* ECF No. 43.  In its Opinion and Order, the Court expressed its concern with the action's case management.  Specifically, the Court determined that this matter, at the time of its writing, would not be manageable as a collective action in light of Guidant's assertion that the potential nationwide class may include 200,000 workers, who are employed by over 1,600 staffing agencies and assigned to work at 56 different companies in a variety of different industries.  *Id.* at PageID.1677.  The Court otherwise found that Plaintiff sufficiently demonstrated a class of similarly situated workers existed.  The parties have since engaged in extensive motion practice related to their various discovery disputes regarding the putative class' size, scope, and manageability.  *See* ECF Nos. 77, 84, 107.

In his present Motion for Conditional Certification and Court-Authorized Notice, Plaintiff now requests the Court authorize notice to:

> All current and former power industry workers who worked for, or on behalf of, Guidant, who were paid and/or billed on a straight time for overtime basis at any time in the last 3 years, and who were assigned to Duke and/or Entergy (the "Straight Time Power Workers").

ECF No. 92, PageID.2621.  Plaintiff includes a footnote to his proposed definition explaining that the time period, presently listed as the last 3 years, should include "any tolling period the Court may order" pursuant to their separate Motion for Tolling (ECF No. 83).  *Id.* at PageID.2621 n.5.

Plaintiff argues that recent discovery in this case demonstrates that the Straight Time Power Workers are similarly situated, and the putative class is manageable. *Id.* at PageID.2635. Specifically, Plaintiff asserts that there are "no more than 5,184 Straight Time Power Workers" covered by the narrowed collective action. *Id.* at PageID.2634. He contends, as he did in his first Motion for Conditional Certification, that Guidant's "straight time for overtime" policy failed to compensate him and other hourly works for their overtime worked. *Id.* at PageID.2652. Plaintiff claims that Guidant's pay practice is "widespread and systematically applied to Smith and the Putative Class." *Id.* at PageID.2643.

The Court previously described Guidant's role as a global workforce managed services provider as such:

> Guidant is a managed services provider ("MSP"), meaning it provides administrative support for companies' contingent worker programs. Guidant offers global workforce management and staffing solutions to various industries, including the oil and gas, as well as nuclear industries. Plaintiff, for example, was staffed to Duke Energy in Indiana as a Mechanical Coordinator and Commissioning Coordinator. According to Plaintiff, Guidant acts as an employer in "many ways," including requiring its clients to enter into Master Service Agreements and its Temporary Worker Agreements. "For all intents and purposes … Guidant acts as the employer, even officing in its clients' facilities on-site and providing on-site representatives to manage the contingent workers."

ECF No. 43, PageID.1663 (internal citations omitted). Guidant details its relationship as an MSP to its customers, including Duke and Entergy, in its Response to Plaintiff's Motion for Conditional Certification. ECF No. 97, PageID.3809–13.

In support of his present Motion for Conditional Certification, Plaintiff reincorporates his original exhibits from his first Motion. *See* ECF No. 92, PageID.2653 (citing ECF Nos. 30-1–30-22). These original exhibits include pleadings, declarations from several workers, Guidant's employment records, and pay records. *See* ECF No. 43, PageID.1664. Additionally, Plaintiff attaches transcripts of three Rule 30(b)(6) depositions, staffing company agreements with vendors, master service agreements with Duke and Entergy, a sealed list of Guidant's Power Workers, and other Entergy documents. Plaintiff argues that this evidence meets both the lenient and "modest-plus" standards for conditional certification. ECF No. 92, PageID.2653. Moreover, Plaintiff contends that the putative class of Straight Time Power Workers is manageable. *Id.* at PageID.2654.

Guidant again opposes Plaintiff's renewed request for conditional certification, arguing that the proposed class is neither similarly situated nor manageable. ECF No. 97, PageID.3807. Guidant emphasizes that a heightened standard of review applies in light of the parties' discovery since the Court's August 20, 2020 Opinion and Order. *Id.* at PageID.3807–08. Moreover, Guidant argues that Plaintiff cannot show that the putative class members are subjected to a common policy in violation of the FLSA. *Id.* at PageID.3813.

In his Motion for Tolling, Plaintiff asks the Court to toll the statute of limitations for all potential opt-ins from the date Guidant filed its initial opposition

to his Motion for Conditional certification—February 28, 2020—until the date of this writing.   ECF No. 83, PageID.2373–74.   He emphasizes the delays in effectuating notice resulted from "procedural delays, Guidant's misrepresentations concerning the size of the putative class, and Guidant's discovery stall tactics[.]" *Id.* at PageID.2385.   Plaintiff thus asserts that potential opt-ins have not been afforded an opportunity to learn of their rights under the FLSA, their ability to make a claim, or the filing requirements to join this lawsuit.   *Id.* at PageID.2387–88.   Moreover, Plaintiff contends that Guidant will not be unduly prejudiced by tolling the potential opt-ins' limitations period because Guidant has been aware of the collective claims since he initiated this action.   *Id.* at PageID.2388.

In its Response, Guidant first argues that Plaintiff's Motion for Tolling is premature since no putative class member has opted in this action pursuant to a notice. ECF No. 85, PageID.2509–10.  Guidant also contends that Plaintiff's Motion for Tolling should be denied because the arguments related to the alleged misrepresentations regarding the size of the putative class, the procedural delay, and the alleged discovery stall tactics lack merit.  *Id.* at PageID.2511.

The parties also filed a Joint Motion to Extend Existing Deadlines.  ECF No. 102.  They ask the Court to establish new deadlines in light of their discovery related to conditional certification and the pending status of the aforementioned motions.

The Court will address each of the pending motions in its analysis below.

6

## III. LAW & ANALYSIS

### A. Plaintiff's Motion for Conditional Certification and Court-Authorized Notice (ECF No. 92)

#### 1. Legal Standard

Section 207 of the FLSA requires employers to compensate their employees at "a rate not less than one and one-half times the regular rate" of pay for time worked in excess of forty hours in any workweek.  29 U.S.C. § 207(a)(1).  The FLSA's "collective action" provision, section 216(b), allows one or more employees to bring an action for overtime compensation on "behalf of himself…and other employees similarly situated."  29 U.S.C. § 216(b).

"Section 216(b) establishes two requirements for a representative action: 1) the plaintiffs must actually be 'similarly situated,' and 2) all plaintiffs must signal in writing their affirmative consent to participate in the action."  *Comer v. Wal-Mart Stores*, 454 F.3d 544, 546 (6th Cir. 2006).  District courts follow a two-phase process for certification in order to determine if opt-in plaintiffs and lead plaintiffs are similarly situated.  *See Williams, et al. v. K&K Assisted Living LLC, et al.*, No. 15-cv-11565, 2015 WL 7257274, at *2 (E.D. Mich. Nov. 17, 2015) (citation omitted).  First, during the "notice" stage, the court determines whether to certify the suit as a collective action, which enables potential opt-in plaintiffs to be notified of and participate in the suit.  *See id.*  Second, after the court has received all the opt-in forms and discovery has concluded, the second stage occurs wherein the court

utilizes a stricter standard to judge whether class members are similarly situated.  *See id.* (citation omitted).

At the initial "notice" stage, the lead plaintiff(s) "must show only that his position is similar, not identical to the positions held by the putative class members." *Comer*, 454 F.3d at 546–47.   Courts do not resolve factual disputes, decide substantive issues on the merits, or make credibility determinations at this initial stage. *Wlotkowski v. Mich. Bell. Tel. Co.*, 267 F.R.D. 213, 217 (E.D. Mich. 2010) (citation omitted).  "Rather, those tasks are addressed at the second stage." *Fisher v. Mich. Bell Tel. Co.*, 665 F.Supp.2d 819, 826 (E.D. Mich. 2009).

If the plaintiff can meet his burden, the court may authorize notification of similarly situated employees to allow them to opt into the suit.  *See Comer*, 454 F.3d at 546.  "The court may also order the defendant to provide plaintiffs with the contact information of potential opt-in plaintiffs."  *Williams*, 2015 WL 7257274, at *3 (citing *Cobus v. DuHadway, Kendall & Associates, Inc.*, No. 13-cv-14940, 2014 WL 4181991, at *2 (E.D. Mich. Aug. 21, 2014)).  If the court grants collective action certification at this stage, "the certification is conditional and by no means final." *Comer*, 454 F.3d at 546–47.

"At the second stage, following discovery, trial courts examine more closely the question of whether particular members of the class are, in fact, similarly situated."  *Id.* at 547.  Using a more rigorous standard at the second stage, "[d]istrict

court have based their final-certification decisions on a variety of factors, including the 'factual and employment settings of the individual plaintiffs, the different defenses to which the plaintiffs may be subject on an individual basis, and the degree of fairness and procedural impact of certifying the action as a collective action.'" *Bacon v. Eaton Aeroquip, LLC*, No. 11-cv-14103, 2012 WL 65657603, at *3 (citation omitted).

### 2. Analysis

As indicated above, Plaintiff seeks collective treatment for power industry workers who were assigned to Duke and/or Entergy and subjected to a uniform "straight time for overtime" pay policy.   ECF No. 92, PageID.2652.   Plaintiff contends that he presents ample evidence demonstrating these workers, similar to the members of his previously proposed class, are similarly situated.   *Id.* at PageID.2652.   Moreover, he argues that the putative class, consisting of 5,184 workers, is manageable.   *Id.* at PageID.2653–54.   The Court will review Plaintiff's renewed Motion and corresponding evidence under the appropriate standard below.

### i.   Heightened Standard

As the Court indicated in its August 20, 2020 Opinion and Order, a heightened standard—known as "modest-plus"—rather than the "fairly lenient standard"

employed in most collective actions during the "notice stage,"[2] is appropriate when parties participate in discovery related to the issue of conditional certification. *See Byers v. Care Transport, Inc.*, No. 13-cv-15174, 2016 WL 4771328, at *3 (E.D. Mich. Sept. 14,2016) (citations omitted). "Under this 'modest-plus' standard, the court compares the allegations set forth in Plaintiff's Complaint with the factual record assembled through discovery to determine whether Plaintiffs have made a sufficient showing beyond their original allegations that would tend to make it more likely that a class of similarly-situated employees exists." *Id.* (citation omitted). At this juncture, the court determines whether the plaintiff has "advanced the ball down the field—showing that it is more likely that a group of similarly situated individuals may be uncovered by soliciting opt-in plaintiffs." *Id.* (citation omitted).

Other district courts within the Sixth Circuit have denoted that this standard does not require as stringent a showing as is required at the second stage of the certification process. *See Weisgarber v. N. Am. Dental Grp., LLC*, No. 4:18cv2860, 2020 WL 1322843, at *2 (N.D. Ohio Mar. 20, 2020) (collecting cases). When reviewing the presented evidence, the court should acknowledge that such evidence

---

[2] The "fairly lenient" standard requires only that the plaintiff "submit evidence establishing at least a colorable basis for [his] claim that a class of 'similarly situated' plaintiffs exist." *Olivo v. GMAC Mortg. Corp.*, 374 F. Supp. 2d 545, 548 (E.D. Mich. 2004) (citation omitted). This similarity can be illustrated by a "modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." *Id.* at 548 (citation and internal quotation marks omitted).

is "necessarily incomplete." *Creely v. HCR ManorCare, Inc.*, 789 F. Supp. 2d 819, 826 (N.D. Ohio 2011) (citation omitted).  Moreover, the court's analysis should be "confined to evaluating whether the proposed class is 'similarly situated'" and should avoid analyzing the merits of the plaintiff's claims.  *Id.* (citations omitted).

Here, given that discovery has occurred in this matter related to the presented issue of conditional certification, *see* ECF Nos. 77, 84, 107, the Court will employ the "modest-plus" standard in analyzing Plaintiff's renewed Motion for Conditional Certification below.

### ii.    Similarly Situated

The FLSA authorizes workers to sue collectively on behalf of themselves and others "similarly situated" for violations of minimum wage and overtime protections of the FLSA.  29 U.S.C. § 216(b).  To be considered "similarly situated," it is sufficient if a plaintiff's "claims [are] unified by common theories of defendants' statutory violations, even if the proofs of those theories are inevitably individualized and distinct."  *Swinney v. Amcomm Telecomm., Inc.*, No. 12-12925, 2013 WL 4507919, at *3 (E.D. Mich. Aug. 23, 2013) (citation omitted).  As discussed above, under the "modest-plus" standard, the Court reviews this matter to determine whether Plaintiff has made a sufficient showing "to advance the ball down the field." *Byers v. Care Transport, Inc.*, No. 13-cv-15174, 2016 WL 4771328, at *5 (E.D. Mich. Sept. 14,2016) (citations omitted).  The Court's inquiry will focus on whether

Plaintiff and the putative class of Straight Time Power Workers are similarly situated with respect to the allegations that the law has been violated. *See Creely v. HCR ManorCare, Inc.*, 789 F. Supp. 2d 819, 826 (N.D. Ohio 2011) (citations omitted).

As discussed above, the Court previously found that Plaintiff's original putative class, which was much broader in scope, was similarly situated. ECF No. 43, PageID.1669. The Court opined that Plaintiff presented sufficient evidence showing that he and potential plaintiffs were 'similarly situated' victims of a common policy or plan that violated the FLSA. *Id.* Plaintiff now relies on the same evidence he presented in his first request for conditional certification, ECF Nos. 30-1–30-22, as well as three separate Rule 30(b)(6) depositions, his own deposition, four additional staffing company agreements, and additional master service agreements, ECF Nos. 92-1–92-10, 93-1, 93-2. Upon careful review of the presented evidence under the heightened standard, the Court finds that Plaintiff has established that he is similarly situated to the putative class of Straight Time Power Workers. For the reasons that follow, the Court concludes that Plaintiff has submitted sufficient evidence to support and advance his allegations.

As to the previously-submitted eight declarations, the Court maintains that each exhibit reveals similar allegations of fact based on the worker's experience in Guidant's system. *See* ECF No. 43, PageID.1672. Plaintiff and the seven other declarants assert that they were regularly required to work in excess of 40 hours per

week.  *See, e.g.*, ECF No. 30-2, PageID.965 (asserting that he worked in 13-hour shifts for as many as 7 days a week); ECF No. 30-4, PageID.979 (claiming that he worked in 11-hour shifts for as many as 5 days a week); ECF No. 30-6, PageID.993 (claiming that he worked in 12-hour shifts for as many as 6 days a week).  Based on their personal experiences, these declarants affirm that Guidant paid numerous other workers according to the same straight time for overtime pay policy.  Importantly, as is now relevant for Plaintiff's renewed Motion, each declarant worked on projects for Guidant's clients that were either owned by Duke and/or Entergy.  *See, e.g.*, ECF No. 30-2, PageID.965; ECF No. 30-3, PageID.972; ECF No. 30-4, PageID.979. Duke and Entergy, two of Guidant's customers, are specifically listed in the narrowed proposed definition.  ECF No. 92, PageID.2634.

In its Response, Guidant emphasizes the potential individualized differences among the putative class members.  ECF No. 97, PageID.3816–20.  Guidant again contests the aforementioned declarations on the grounds that they only provide a "limited sampling" of the suppliers that supplied the workers he seeks to represent in this action.  ECF No. 97, PageID.3817–18.  In support of its argument, Guidant cites to other district court decisions, including two cases which it relied on in challenging Plaintiff's first Motion, *see* ECF No. 43, PageID.1672–73, which noted a lack of affidavits in support of motions for conditional certification.  The Court reiterates that each of the provided declarations cover the two customers specifically

named in the proposed class: Duke and Entergy.  Moreover, the Court maintains that whether Plaintiff and the putative class of Straight Time Power Workers worked in the same job position, at the same locations, were sourced to the same customers, or by the staffing companies, has no bearing on whether they are "similarly situated" with respect to the challenged policy.  Indeed, as another court within this District recently explained, the process of carefully evaluating the opt-in class members "must occur at the second phase of class certification, after discovery is completed and all class members have opted in." *Aliah Larry v. Kelly Servs., Inc.*, 20-cv-11481, ECF No. 37, PageID.1087.

The Court next looks to the additional exhibits presented in Plaintiff's present Motion.  Plaintiff contends that Guidant admits that Plaintiff and the putative class of Straight Time Power Workers are similarly situated.  ECF No. 100, PageID.4051.  First, as to the Rule 30(b)(6) depositions, the Court observes that Lynda Lemoine, a Project Manager for Guidant's program with Entergy, affirmed that Guidant's staffing company agreement with Entergy is not specific to a particular vendor; rather, the rights and obligations set forth in the staffing agreement are applicable to all vendors.  ECF No. 92-1, PageID.2692 at 124:2-9.  Moreover, Lemoine asserted that Guidant treats all of the staff workers the same.  *Id.* at PageID.2962 123:21-124:4.

The Court also takes notice of the additional staffing company agreements attached to Plaintiff's present Motion.  ECF Nos. 90-5–90-8.  Plaintiff cites to these documents to support his argument that the staffing company agreements, and Guidant's rights and obligations under them, are the same, regardless of the vendor.  ECF No. 92, PageID.2639.  He also highlights the agreements' "pay rate" and "overtime rate" sections under "Schedule C" to support his claim that Guidant dictates the straight time for overtime pay policy for all of the Straight Time Power Workers.  *Id.* at PageID.2638.  The Court finds that these documents, together with the Rule 30(b)(6) depositions, sufficiently supplement Plaintiff's original evidence, which included paystubs from three employees.  *See* ECF No. 43, PageID.1675.

In sum, the Court finds that Plaintiff "advance[s] the ball down the field" to demonstrate that he and the putative class of Straight Time Power Workers are similarly situated.  To the extent that Guidant contests its status as the employer of Plaintiff or the putative class, the Court once more emphasizes that it is premature for the Court to make a determination on this issue, as it is not a prerequisite for conditional certification.  *See Wlotkowski v. Mich. Bell Tel. Co.*, 267 F.R.D. 213, 219 (E.D. Mich. 2010); *see also Graham v. Word Enterprises Perry, LLC*, No. 18-cv-10167, 2019 WL 2959169, at *5 (E.D. Mich. June 18, 2019).  Indeed, "courts typically do not resolve factual disputes, *decide substantive issues going to the ultimate merits*, or make credibility determinations."  *Gallagher v. Gen. Motors Co.*,

No. 19-11836, 2020 WL 3481649, at *3 (E.D. Mich. June 26, 2020) (emphasis added); *see also Weisgarber v. N. Am. Dental Grp., LLC*, No. 4:18-cv-2860, 2020 WL 1322843, at *2 (N.D. Ohio Mar. 20, 2020) (finding that a merits review is improper at the first stage even under a heightened standard of review).

### iii.   Manageability

The Court previously expressed its concern with this action's manageability. ECF No. 43, PageID.1676.  Specifically, this Court determined that this matter, at the time of its writing, would not be manageable as a collective action in light of Guidant's assertion that the potential nationwide class may include 200,000 workers, who are employed by over 1,600 staffing agencies and assigned to work at 56 different companies.  *Id.* at PageID.1676–77.  The parties have since engaged in discovery related to the outstanding question of manageability.  In his present Motion, Plaintiff argues that the proposed class is manageable.  For the reasons that follow, the Court agrees.

Plaintiff explains that the proposed class of Straight Time Power Workers, assuming one hundred percent participation, consists of 5,184 workers.  ECF No. 92, PageID.2654.   These workers are supplied by approximately 200 staffing agencies and are assigned to 2 customers—Duke and Entergy—in a single industry. *Id.*  Plaintiff emphasizes that he "significantly narrowed his proposed class definition to only include power industry workers who were paid and/or billed on Guidant's

straight time for overtime plan and assigned to Duke and/or Entergy." ECF No. 100, PageID.4054–55. In support of his argument, Plaintiff points to a sealed list of 5,184 workers, who were assigned to either Duke or Entergy between December 11, 2017 and December 10, 2020. ECF No. 93-2, PageID.3371.

In contesting the new proposed class, Guidant cites to four out-of-circuit cases for the proposition that this case's "inevitable individual inquiries" pose "insurmountable manageability challenges[.]" ECF No. 97, PageID.3824–27. For example, in *Gibbs v. MLK Express Servs., LLC*, the district court denoted a number of individualized inquiries would follow in a nationwide class of Amazon "delivery associates." No. 2:18-cv-434-FtM-38MRM, 2019 WL 2635746, at *9 (M.D. Fla. June 27, 2019). There, the district court acknowledged that courts typically look to such inquiries for the decertification stage, but also recognized that "courts are not bound by a rigid two-tier approach." *Id.* at *8. Importantly, the district court emphasized that an inquiry as to each individual arbitration clause, with each individual "delivery service provider," under each individual state law, was not dispositive of its decision to deny conditional certification as to the nationwide class; rather, this only provided another reason to do so. *Id.* at *9.

This Court declines to follow the *Gibbs* court's emphasis on individual inquiries at this stage and instead will follow this Circuit's precedent for adhering to a two-tier approach. Moreover, the Court finds Guidant's citation to *Lewis-Gursky*

*v. Citigroup, Inc.*, No. 18:15-cv-2887-T-24-MAP, 2017 WL 892604 (M.D. Fla. Mar. 6, 2017) unavailing.  In *Lewis-Gursky*, the district court concluded that the plaintiffs were unable to satisfy their burden of establishing that they and the putative class were similarly situated in light of several individualized inquiries.  *Id.* at *5.  However, this Court has already determined, twice, and under two separate standards, that Plaintiff and the proposed class are similarly situated.  The Court will not adopt the *Lewis-Gursky*'s analysis as to whether a proposed class is similarly situated for its present inquiry into this case's manageability.

Plaintiff here highlights several instances in the record which adequately dispute, at least at this juncture, Guidant's focus on the number of individualized questions which may arise should this case continue as a collective action.  As indicated above, Lemoine affirmed at her Rule 30(b)(6) deposition that Guidant treats the putative class members the same, regardless of their vendor assignment.  ECF No. 92-1, PageID.2692 at 123:21-124:1.  She also confirmed Guidant's use of similar staffing company agreements with various vendors.  *Id.* at 124:2-124:22.  Further, Lemoine indicated that Guidant, rather than 148 separate entities, has the responsibility in enforcing the methods of payment and classification with the staffing companies.  *Id.* at PageID.2686 at 99:7-18; *see also id.* at PageID.2688 at 108:5-111:24.  The Court also finds Plaintiff's deposition, where he explained that he and other workers were told it was "a Guidant thing" when they approached

vendors about their lack of paid overtime, relevant for its present analysis.  ECF No. 92-4, PageID.2736 at 35:2-36:7.  Additionally, the Court notes the similarities among the several staffing company agreements between Sirius, Warren Steele & Associates, MBO Partners, and Zempleo.  ECF No. 92-5–92-7.

Lastly, the Court takes notice of parts in the record which dispute Guidant's original assertion of the original proposed class's size.  In Susan deBlaquiere's Rule 30(b)(6) deposition, she explained that her original declaration, which discussed Guidant's 56 customers and 1,647 suppliers, was not limited to workers that utilized a straight time for overtime bill rate; rather, she testified that these numbers related to all of Guidant's customers and suppliers.  ECF No. 112, PageID.4149 at 86:23–84:19.  deBlaquiere was also unable to confirm how Guidant estimated that Plaintiff's original proposed class would involve 200,000 workers.  *Id.* at PageID.4151 at 94:8–95:21.  The Court finds that deBlaquiere's testimony casts further doubt on the manageability issue previously raised by Guidant and the overall concern with the proposed class's size.  Moreover, the Court finds deBlaquiere's testimony related to Guidant's audit rights—including the "right to audit the staffing company to confirm the workers are paid on a salary basis and their additional compensation, straight time compensation is in accordance with the law," *id.* at PageID.4155 at 110:9–14—also diminishes the alleged "inevitable manageability challenges" at issue in this case.

In sum, the Court finds that aforementioned evidence, combined with the sealed list of Guidant's Power Workers, demonstrates this case's manageability. The Court will accordingly permit this case to proceed as a collective action.   It emphasizes once more, however, that any potential individual inquiries can be appropriately addressed at the second, decertification stage.

### iv.    Proposed Notice

As a final matter, Plaintiff asks the Court to authorize his proposed Notice and Consent forms (ECF No. 92-20), his email, text message, and phone scripts (ECF No. 92-21), and his opt-in schedule (ECF No. 92-22).   The Supreme Court has acknowledged that judicial notice to a putative class in FLSA collective actions is proper in "appropriate cases [.]" *Hoffmann-La Roche v. Sperling,* 493 U.S. 165, 169 (1989).   "The district court may use its discretion to authorize notification of similarly situated employees to allow them to opt into the lawsuit." *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546 (6th Cir. 2006) (citing *Hoffmann-La Roche*, 493 U.S. at 169)).

Several courts in this District, including this Court, have noted several reasons why judicial notice is appropriate in a FLSA collective action. *See, e.g.*, *Williams v. K&K Assisted Living, LLC*, No. 15-cv-11565, 2015 WL 7257274, at *4 (E.D. Mich. Nov. 17, 2015) (citing *Fisher v. Mich. Bell. Tel. Co.*, 665 F. Supp. 2d 819, 828–29 (E.D. Mich. 2009)); *Wlotkowski v. Mich. Bell. Tel. Co.*, 267 F.R.D. 213, 219 (E.D.

Mich. 2010) (same). First, "judicial notice protects … claims by informing similarly situated employees of the facts needed to make an informed decision whether to opt-in." *Fisher, 665 F. Supp. at 8*29. "Second, judicial notice promotes judicial economy, helps avoid the 'multiplicity of duplicative suits' inherent in these types of lawsuits, and notifies putative plaintiffs of an economically feasible litigation option." *Id*. Third, judicial notice is also appropriate where the proposed notice uses language similar to other FLSA actions. *Id.*

Here, the parties dispute the content of the proposed Notice. Guidant argues that the proposed Notice "differs in form and language from notices commonly approved[.]" ECF No. 97, PageID.3830. Guidant thus suggests that the parties should work together to submit a mutually acceptable notice in light of the case's complexity and "multiple unusual provisions that courts have rejected." *Id.* At the hearing, the parties confirmed that they are willing to meet and confer on a proposed Notice.

Given the parties' present dispute as to the actual content and methods of Plaintiff's proposed Notice, the Court declines to approve Plaintiff's proposed Notice and opt-in schedule at this time. Rather, the Court will order the parties to meet and confer on an acceptable Notice and its methods, as set forth in the Conclusion to this Opinion and Order.

**B. Plaintiff's Motion for Tolling (ECF No. 83)**

### 1.  Legal Standard

Under the FLSA, a lawsuit to recover unpaid compensation must "be commenced within two years after the cause of action accrued," unless the action arose "out of a willful violation," in which case the lawsuit must be initiated within three years after accrual.  29 U.S.C. § 255(a); *Hughes v. Region VII Area Agency on Aging*, 542 F.3d 169, 187 (6th Cir. 2008).  Generally, an action is "commenced" on the date the complaint is filed.  29 U.S.C. § 256.  In the case of a collective action, for an individual claimant whose claim is not commenced as of the time the complaint is filed, that claimant's action is considered to be "commenced" when he files written consent to opt in.  29 U.S.C. § 256(b).

Courts within the Sixth Circuit apply the doctrine of equitable tolling in FLSA actions.  *Hughes v. Region VII Area Agency on Aging*, 542 F.3d 169, 187–88 (6th Cir. 2008); *see also Kutzback v. LMS Intellibound, LLC*, 233 F. Supp. 3d 623, 628 (W.D. Tenn. 2017).  The doctrine "permits courts to extend the statute of limitations on a case-by-case basis to prevent inequity." *Truitt v. Cty. of Wayne*, 148 F.3d 644, 648 (6th Cir. 1998).  The Sixth Circuit has denoted that the doctrine is used "sparingly" by federal courts.  *See Robertson v. Simpson*, 624 F.3d 781, 784 (6th Cir. 2010) (citation omitted).  Ultimately, the decision to invoke equitable tolling in a particular case lies solely within the discretion of the district court.  *Truitt*, 148 F.3d at 648.

The party seeking equitable tolling bears the burden of proving he is entitled to it. *See Allen v. Yukins*, 366 F.3d 396, 401 (6th Cir. 2004).  Courts look to the following factors when determining whether to apply the doctrine:

> (1) the plaintiff's lack of notice of the filing requirement; (2) the plaintiff's lack of constructive knowledge of the filing requirement; (3) the plaintiff's diligence in pursuing [his or] her rights; (4) an absence of prejudice to the defendant; and (5) the plaintiff's reasonableness in remaining ignorant of the particular legal requirement.

*Jackson v. United States*, 751 F.3d 712, 719 (6th Cir. 2014) (citation omitted).  These factors are not comprehensive, nor must all factors be met in each case.  *Allen*, 366 F.3d at 401.

### 2.  Analysis

As indicated above, Plaintiff argues that equitable tolling is appropriate here in light of Guidant's actions throughout this lawsuit.  He asserts that "Guidant has unreasonably delayed the putative class members from receiving notice of this Action from the outset."  ECF No. 83, PageID.2372.  He thus asks the Court to toll the statue of limitations from the date Guidant filed its initial opposition to the first Motion for Conditional Certification through the date of this writing.  *Id.*

Guidant contends, however, that Plaintiff's request is premature.  ECF No. 85, PageID.2509.   Moreover, Guidant argues that even if Plaintiff's Motion was properly before the Court, it should still be denied since Plaintiff's arguments related to its alleged delay are without merit.  *Id.* at PageID.2511.

As an initial matter, the Court agrees with Plaintiff that the doctrine of equitable tolling is decided on a case-by-case basis, rather than on a plaintiff-by-plaintiff basis. *See Penley v. NPC Int'l, Inc.*, 206 F. Supp. 3d 1341, 1348 (W.D. Tenn. 2016); *see also Betts v. Cent. Ohio Gaming Ventures, LLC*, 351 F. Supp. 3d 1072, 1077 (S.D. Ohio 2019) (finding that group consideration for purposes of analyzing equitable tolling is proper). Nevertheless, the Court declines to apply the doctrine to this action at this juncture. As another court within this District highlighted, "[m]ost District Judges in [the Sixth Circuit] have concluded that it is improper to equitably toll the claims of potential opt-in plaintiffs who are not yet before the court." *Kim v. Detroit Med. Informatics, LLC*, No. 19-11185, 2019 WL 6307196, at *6 (E.D. Mich. Nov. 25, 2019) (Parker, J.) (citing *Brittmon v. Upreach, LLC*, 285 F. Supp. 3d 1033, 1046 (S.D. Ohio 2018) (collecting cases)). This Court will follow this precedent in holding that a motion for equitable tolling, which seeks relief on behalf of plaintiffs who have not yet appeared, is premature. As another court in the Sixth Circuit explained:

> In contrast to a class action lawsuit brought under Federal Rule of Civil Procedure 23, the named plaintiffs in an FLSA collective action do not represent anyone other than themselves. Accordingly, the named plaintiffs have no authority to move to equitably toll the claims of the potential opt-in plaintiffs. *See Jesiek v. Fire Pros, Inc.*, No. 1:09–cv–123, 2011 WL 2457311, at *1–2 (W.D. Mich. June 16, 2011) (holding that a motion for equitable tolling, purporting to seek relief on behalf of plaintiffs who had not yet appeared, was premature, given that named plaintiffs had no need for equitable tolling of their own claims, and had no personal interest in the outcome of the motion).

*Atkinson v. TeleTech Holdings, Inc.*, No. 3:14-cv-253, 2015 WL 853234, at *8 (S.D. Ohio Feb. 26, 2015).

While resolution of the present equitable tolling issue is presently premature, the Court notes, as Plaintiff highlights in its Motion, ECF No. 83, PageID.2383–84, that it is "common" for courts to find tolling appropriate in FLSA collective actions, specifically when "plaintiffs pursue their claims diligently but nevertheless experience a substantial delay between the time they moved for conditional certification and the time the court granted conditional certification/authorized notification to potential class members." *Betts v. Cent. Ohio Gaming Ventures, LLC*, 351 F. Supp. 3d 1072, 1077 (S.D. Ohio 2019). Moreover, the Court recognizes that without the doctrine of equitable tolling, the value of FLSA actions would be diminished, "as the potential recovery for the plaintiff class continuously lessens as cases are delayed." *Penley*, 206 F. Supp. 3d at 1348 (citations omitted).

Accordingly, "[i]f and when potential plaintiffs whose claims would otherwise be time-barred choose to opt in to the class, they may … move for equitable tolling." *Mathews v. ALC Partner, Inc.*, No. 2:08-cv-10636, 2009 WL 2591497, at *8 (E.D. Mich. Aug. 24, 2009) (Murphy, J.); *see also Kutzback v. LMS Intellibound, LLC*, 233 F. Supp. 3d 623, 628 (W.D. Tenn. 2017) (initially denying the plaintiff's motion for equitable tolling and later granting, after certain plaintiffs opted in, those plaintiffs' motion for equitable tolling due to established delay); *In re*

*Amazon.com, Inc., Fulfillment Ctr. Fair Labor Standards Act (FLSA) & Wage & Hour Litig.*, No. 14-md-02504, 2014 WL 3695750, at *4 (W.D. Ky. July 24, 2014) ("To deny equitable tolling now certainly does not preclude some form of it later. Plaintiffs or groups of them may well establish their diligence and demonstrate that they qualify as an instance of 'extraordinary circumstances.'  But for now, a blanket equitable tolling of all current and prospective opt-in plaintiffs is unjustified and premature.").   In line with these cases, the Court will deny without prejudice Plaintiff's present Motion for Tolling as premature.[3]

### C. Joint Motion to Extend Existing Deadlines (ECF No. 102)

Lastly, the Court will address the parties' Joint Motion to Extend Existing Deadlines.  ECF No. 102.  The parties ask the Court to establish new deadlines in light of their discovery related to conditional certification and the pending status of the aforementioned motions.

As the parties correctly denote, a schedule may be modified for "good cause and with the judge's consent."  Fed. R. Civ. P. 16(b)(4).  "The primary measure of Rule 16's 'good cause' standard is the moving party's diligence in attempting to meet the case management order's requirements[.]"  *Smith v. Holston Med. Grp., P.C.*, 595 F. App'x 474, 477 (6th Cir. 2014).  Here, the Court finds there is good

---

[3] In light of this ruling, the Court will not address the merits of Plaintiff's present Motion, including Guidant's alleged actions in causing delay for the issue of conditional certification.

cause to modify the pretrial scheduling order.  The parties have participated in discovery related to the outstanding issue of conditional certification.  Moreover, they have participated in extensive motion practice related to this issue.

Accordingly, the Court will grant the parties' Joint Motion to Extend Existing Deadlines.  ECF No. 102.  The Court will issue an amended pretrial scheduling order on this case's docket to reflect this ruling and the provided dates at the hearing.

### IV. CONCLUSION & ORDER

For the reasons articulated above, **IT IS HEREBY ORDERED** that Plaintiff's Motion for Conditional Certification and Court-Authorized Notice [#92] is **GRANTED**.  Conditional certification is warranted for the class of Straight Time Power Workers as defined in Plaintiff's Motion.

**IT IS FURTHER ORDERED** that the parties work together to draft a mutually acceptable Notice to be sent to class members advising them of this lawsuit and their opt-in/opt-out rights.  The parties should work together and submit a proposed Order for such purpose.  The proposed Notice shall be submitted to the Court for approval within one week of the issuance of this Opinion and Order.  If the parties are unable to come to an agreement, each side will submit their proposed Notice to the Court.  Once the Court approves a Notice, it will issue an order directing issuance of the notice to class members.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Tolling [#83] is

**DENIED WITHOUT PREJUDICE**.

**IT IS FURTHER ORDERED** that the parties' Joint Motion to Extend Existing Deadlines [#102] is **GRANTED**.

**SO ORDERED.**

Dated:       July 30, 2021

/s/Gershwin A. Drain
HON. GERSHWIN A. DRAIN
United States District Judge

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
July 30, 2021, by electronic and/or ordinary mail.
/s/ Teresa McGovern
Case Manager
